UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HENRY VICKEY TUCKER,

       Petitioner,

v.

JEFFREY SEARLS, *in his official capacity as Officer-in-Charge, Buffalo Federal Detention Facility, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security*,

       Respondent.
_____

22-CV-608-LJV
DECISION & ORDER

      Henry Vickey Tucker has been detained in the custody of the United States Department of Homeland Security ("DHS") since December 23, 2020—more than 22 months. Docket Item 1 at ¶ 2. On August 10, 2022, Tucker filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Docket Item 1. On September 29, 2022, the respondent answered the petition, Docket Item 5, and on October 23, 2022, Tucker replied, Docket Item 8.

      For the reasons that follow, this Court grants Tucker's petition in part.

## **FACTUAL AND PROCEDURAL BACKGROUND**

      The following facts, taken from the record, come largely from filings with DHS.

      Tucker is a native and citizen of Liberia. Docket Item 5-1 at 2; Docket Item 5-3 at ¶ 5. He entered the United States on September 13, 2000, Docket Item 5-3 at ¶ 5, and became a lawful permanent resident on May 13, 2002, Docket Item 1 at ¶ 1; Docket

Item 6 at 3.  On November 17, 2005, Tucker was convicted of criminal possession of stolen property in the fourth degree and sentenced to between eighteen months' and three years' imprisonment.  Docket Item 5-3 at ¶ 8; Docket Item 6-1 at 9.

On March 24, 2006, DHS issued a "Notice to Appear," charging that Tucker was subject to removal from the United States under various provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537.  Docket Item 6; see Docket Item 5-3 at ¶ 9.  More specifically, DHS charged that Tucker was subject to removal under section 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, namely a theft offense for which the term of imprisonment is at least one year, see id. § 1101(a)(43)(G); and section 1227(a)(2)(A)(i) for having been convicted of at least one crime of moral turpitude within five years of his date of admission.  See Docket Item 6 at 3.  On August 29, 2006, an Immigration Judge ("IJ") ordered Tucker removed to Liberia but granted withholding of his removal.  Docket Item 6-3 at 31.[1]

On October 17, 2012, Tucker was convicted of attempted murder in the second degree and sentenced to fourteen years' imprisonment.  Docket Item 5-3 at ¶ 11; Docket Item 6-1 at 3-4.  On November 24, 2020, DHS moved to reopen Tucker's removal proceedings and terminate the withholding of his removal.  Docket Item 5-3 at ¶ 12; Docket Item 6-6 at 2.  An IJ granted DHS's motion to reopen the removal proceedings, and on December 23, 2020, when Tucker was conditionally released from prison, he was taken into DHS custody.  Docket Item 5-3 at ¶¶ 13-14; Docket Item 6-5

---

[1] Under 8 U.S.C. § 1231(b)(3), a noncitizen cannot be removed to a country if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion."  The IJ withheld Tucker's removal because Tucker "was the victim of past persecution" in Liberia.  See Docket Item 6-3 at 24-26, 29-31.

at 1-2.  On February 2, 2021, DHS added two additional charges of removability against Tucker under 8 U.S.C. § 1227(a)(2)(A)(iii): for having been convicted of murder, rape, or sexual abuse of a minor, *see id.* § 1101(a)(43)(A); and for attempting or conspiring to commit an aggravated felony, *see id.* § 1101(a)(43)(U).  Docket Item 5-3 at ¶ 15; Docket Item 6-8 at 1.

On February 7, 2021, an IJ granted DHS's motion to terminate the withholding of Tucker's removal.  Docket Item 5-3 at ¶ 16; Docket Item 6-9.  On February 17, 2021, after Tucker conceded his removability, an IJ found him removable.  Docket Item 5-3 at ¶ 17; Docket Item 6-10 at 8-9.  Nevertheless, Tucker asked that his removal be deferred under the Convention Against Torture ("CAT").  Docket Item 5-3 at ¶ 18; Docket Item 6-10 at 9.  After receiving an extension of time to submit his CAT application, Docket Item 5-3 at ¶ 20; Docket Item 6-11 at 2-3, Tucker submitted his CAT application to the Immigration Court on April 1, 2021, Docket Item 5-3 at ¶ 21; Docket Item 6-12 at 1-2.  Two weeks later, an IJ denied Tucker's CAT application and ordered him removed to Liberia.  Docket Item 5-3 at ¶ 22; Docket Item 6-12 at 9-10.

On May 12, 2021, Tucker appealed the IJ's order of removal to the Board of Immigration Appeals ("BIA"), Docket Item 5-3 at ¶ 23; Docket Item 6-13; he then requested and was granted an extension of time to file a brief in support of that appeal, Docket Item 5-3 at ¶ 24; Docket Item 6-14.  Tucker submitted his brief on July 15, 2021, Docket Item 5-3 at ¶ 26; Docket Item 6-15 at 1, and on September 30, 2021, the BIA dismissed Tucker's appeal, adopted and affirmed the IJ's decision, and entered a final order of removal, Docket Item 5-3 at ¶ 27; Docket Item 6-16 at 1-2.

On October 29, 2021, Tucker filed a petition for review of the BIA's final order of removal and a motion for a stay of removal with the Second Circuit. Docket Item 5-3 at ¶ 30; Docket Item 6-20 at 2. That petition remains pending. *See* Docket Item 5-3 at ¶ 32; *Tucker v. Garland*, No. 21-6572, Docket Item 1 (2d Cir. 2021).

## **DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that Tucker is validly detained under 8 U.S.C. § 1231, Docket Item 5-1 at 5-12, and that even if this Court finds that Tucker's detention is governed by 8 U.S.C. § 1226, his detention still is valid, Docket Item 5-1 at 17-21.

Tucker disagrees on three grounds. First, he contends that he is detained under 8 U.S.C. § 1226(c) rather than section 1231. Docket Item 8 at 2-7. Second, he argues that his detention has become "unreasonably prolonged" and that "continuing to detain him without a constitutionally adequate bond proceeding" at which the government must justify his continued detention violates his right to "procedural due process" under the Fifth Amendment of the United States Constitution. Docket Item 1 at 17. And third, Tucker says that even if section 1231 governs his detention, his continued detention is invalid because there is "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." *See* Docket Item 8 at 18-19; *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

## I. STATUTORY CHALLENGE

This Court begins by considering the statutory basis for Tucker's detention. Tucker says that he is detained pursuant to 8 U.S.C. § 1226(c), Docket Item 8 at 2-7, while the government contends that Tucker's detention is governed by 8 U.S.C. § 1231(a), Docket Item 5-1 at 5-12.  This Court agrees with Tucker and finds that his detention is governed by 8 U.S.C. § 1226(c).

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018). Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation."  *Id*. at 53.  "[T]he 'removal period[]' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the [noncitizen].'"  *Id*. at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

> The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement."

*Id*. at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

Tucker has asked the Second Circuit to review the BIA's decision and to stay his removal.  *See Tucker v. Garland*, No. 21-6572, Docket Item 1 (2d Cir. 2021).  Under DHS's forbearance agreement with the Second Circuit, "DHS will not remove any [noncitizen] who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted

5

by the court or the [noncitizen's] stay motion is otherwise denied." *Sankara v. Whitaker*,

2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019). This Court accordingly has held that

until a Second Circuit panel rules on a noncitizen's request for a stay of his removal, the

"forbearance agreement amounts to a court ordered stay of the removal of the

[noncitizen]." *See Hemans v. Searls*, 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019);

*Sankara*, 2019 WL 266462, at *4.[2] In other words, this Court construes the forbearance

agreement as effectively rendering Tucker's removal stayed under section

1231(a)(1)(B)(ii). Therefore, Tucker is detained under section 1226.[3]

---

[2] The Supreme Court's recent decision in *Johnson v. Guzman Chavez*, 141 S.Ct. 2271 (2021), cited by the government, is not to the contrary. As Tucker correctly observes, *Guzman Chavez* "concerned a completely different context than the one presented here." Docket Item 8 at 6. In that case, the Court considered which statutory provision—section 1226 or section 1231—applies to noncitizens "who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." *Guzman Chavez*, 141 S.Ct. at 2280. In that context, the Court said, a noncitizen's removal order is "administratively final" because the noncitizen cannot contest *whether* he can be removed, but only to *where* he can be removed. *Id.* at 2285-86. Section 1231 therefore governs in these situations. *Id.* at 2289. Here, in contrast, Tucker's pending petition for review in the Second Circuit and the stay resulting from the Second Circuit's forbearance agreement with DHS mean that his removal order is not final.

[3] The government's argument that the Second Circuit "has not issued an order staying [Tucker's] removal," *see* Docket Item 5-1 at 8, does not address the fact that, due to the forbearance agreement's stay of Tucker's removal, the Second Circuit has no reason to, and therefore would not, issue a formal stay. Moreover, because the forbearance agreement is an agreement between DHS and the Second Circuit, it is correctly viewed as an order of the Second Circuit staying removal. Indeed, as Tucker highlights, the Second Circuit decision from which the forbearance policy originates states that "in all subsequently filed immigration cases, the Clerk of Court [for the Second Circuit] is directed *to issue an order* consistent with [that] decision on a rolling basis." *In re Immigr. Petitions for Rev. Pending in U.S. Ct. of Appeals for Second Cir.*, 702 F.3d 160, 162 (2d Cir. 2012) (emphasis added); *see* Docket Item 8 at 5-6. The forbearance agreement responded to that order and moots the necessity of another court order staying removal. *See, e.g.*, *Jack v. Decker*, 2022 WL 4085749, at *5 (S.D.N.Y. Aug. 19, 2022) ("In light of [the forbearance agreement], the Second Circuit has indicated that it may decline to act on a motion for a stay of removal because the

Because Tucker is not detained under section 1231(a), this Court need not evaluate the parties' arguments regarding whether his detention violates that provision as interpreted by the Supreme Court in *Zadvydas*.

## II. DUE PROCESS

Tucker alleges that his continued detention violates the Due Process Clause. *See* Docket Item 1 at ¶ 4. The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty." *Id*. (citations and internal

---

noncitizen will not be removed pending determination of [the noncitizen's] petition regardless." (citing *Efstathiadis v. Holder*, 752 F.3d 591, 599 n.5 (2d Cir. 2014))). So arguing that the forbearance agreement is not a court order staying a noncitizen's removal suggests that the government has found a clever way to do an end run around the statute by eliminating the possibility of "a court order[ing] a stay of the removal." *See generally Hechavarria*, 891 F.3d at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)(ii)). That is neither what Congress intended nor an appropriate interpretation of the statute.

For all those reasons, the forbearance agreement is a court-ordered stay. *See, e.g.*, *Barrera Zuniga v. Garland*, 2021 WL 5989779, at *3 (W.D.N.Y. Dec. 16, 2021) (holding that "the forbearance agreement amounts to a court-ordered stay of removal" and collecting cases that hold the same); *Argueta Anariba v. Shanahan*, 190 F. Supp. 3d 344, 349 (S.D.N.Y. 2016) (agreeing with the courts that "have held that, under the circumstances created by the forbearance policy, moving for a stay prevents the start of the removal period as if a [c]ourt had issued a stay of removal pending judicial review" (citations and internal quotation marks omitted)); *but see Brathwaite v. Barr*, 475 F. Supp. 3d 179, 186 (W.D.N.Y. 2020) ("[T]he forbearance is not a stay."); *Narain v. Searls*, 2020 WL 95425, at *3 (W.D.N.Y. Jan. 8, 2020) ("disagree[ing] with the courts . . . that have found the DHS-Second Circuit [forbearance] agreement to be equivalent to a court-ordered stay").

quotation marks omitted).[4]  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id*.  "This requirement has traditionally been referred to as 'procedural' due process."  *Id*.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint."  *Id*. (emphasis in original) (citations and internal quotation marks omitted).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[]." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after

---

[4] Tucker does not claim that his detention violates his right to substantive due process.  *See* Docket Items 1 and 8.

proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

Tucker challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at 1-2. The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, J., concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans*, 2019 WL 955353, at *5. "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id*. "If it has not, then there is no procedural due process violation." *Id*. "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id*. (alternation omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the

government has not provided the procedural safeguards dictated by the *Mathews* factors to [a noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### A.     Tucker's Detention

"[W]hen weighing the lawfulness of the continued detention of [a noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged.  *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019).  This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal."  *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention.  Tucker has been in DHS custody since December 23, 2020—more than 22 months.  *See* Docket Item 5-3 at ¶¶ 13-14; Docket Item 6-5 at 1-2.  "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *See Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018) (and cases cited therein).  In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[5]

---

[5] *See, e.g.*, *Nyynkpao v. Garland*, 2021 WL 8315005, at *2 (D. Minn. Dec. 2, 2021) (over eight months); *Graham v. Decker*, 2020 WL 3317728, at *5 (S.D.N.Y. June 18, 2020) (over ten months); *Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wis. 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1217 (11th

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of . . . detention at stake" and noting that in most cases, section 1226(c) detention "lasts for less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Tucker's 22-month detention far exceeds the four-month average cited in *Demore*. The length of Tucker's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Tucker's detention. *See Sajous*, 2018 WL 2357266, at *11. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 409 F. Supp. 3d at 717.

The government has submitted the declaration of a BFDF employee regarding the conditions of Tucker's detention. *See* Docket Item 5-2 at ¶¶ 5-16. In that declaration, the government avers that the facility is unlike a prison because "most

---

Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").

11

persons . . . are not locked in a cell," they "do not face the same level of restrictions typical of prison restrictions on inmates," and they "ordinarily may move throughout [BFDF] without being required to wear handcuffs or legcuffs." *Id.* at ¶¶ 9, 11, 16.  "Six of the dorm units are open-dorm style," but three others—for detainees with criminal histories or female detainees—have cell doors that close at night. *Id.* at ¶ 11.  And "persons held at BFDF [are] required to wear . . . restraints . . . when being booked in or booked out" or when they are "facing discipline [and] are brought to the Special Housing Unit" ("SHU"). *Id.* at ¶ 16.

Because of the cells, restraints, and discipline in the SHU, conditions at BFDF certainly "resemble penal confinement" for at least some persons detained there. *See Muse*, 409 F. Supp. 3d at 717.  And while the record contains no facts about the particular conditions of Tucker's confinement, he may well be locked in a cell at times because, as the government repeatedly highlights, he has a significant criminal history. *See* Docket Item 5-1 at 2, 18, 21.  So the government has not shown that Tucker's detention is "meaningfully different from [detention in] a penal institution," *see Sajous*, 2018 WL 2357266, at *11, and this factor therefore weighs in Tucker's favor as well.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant [has] simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process.  [A

12

noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6).  Indeed,

> although [a noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.  The mere fact that [a noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision.  The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonableness.

*Id*.

Here, the government argues that "Tucker's length of time in detention is solely the result of his extension requests . . . and attempts to reverse his order of removal before the BIA and the Second Circuit."  Docket Item 5-1 at 19.  And it is true that Tucker requested and was granted an extension of time to submit his CAT application to the Immigration Court, Docket Item 6-11 at 2-3, and an extension of time to submit a brief in support of his appeal to the BIA, Docket Item 6-14.  But it appears from the record that the reason for at least one of these requests was that Tucker was in quarantine through no fault of his own.  *Id*.

Moreover, even if Tucker has caused some of the delay in his removal process, he has not "abus[ed] the processes provided to him."  *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436).  He requested two extensions, at least one for a legitimate medical reason, *see* Docket Item 6-11 at 2-3; otherwise, he has done nothing more than challenge his removal and appeal the IJ's decision to the BIA and then to the Second Circuit.  The government decisionmakers, in contrast, are collectively

13

responsible for over sixteen months of delay.[6]  Therefore, the third factor also weighs in Tucker's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  This Court declines to weigh the merits of Tucker's claims pending before the Second Circuit.

After balancing all these factors, this Court finds that Tucker's detention has been unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

### B.     The Process Due to Tucker

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake."  *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the conclusion that Tucker's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence,

---

[6] Once Tucker was taken into DHS custody, an IJ did not terminate the withholding of his removal for nearly a month and a half.  *See* Docket Item 6-5 at 1-2; Docket Item 6-9.  After Tucker submitted his appeal of the IJ's order to the BIA, the BIA took approximately two and a half months to render a decision.  *See* Docket Item 6-13; Docket Item 6-16.  And Tucker's petition for review of the BIA's final order of removal has been pending before the Second Circuit for more than a year.  *See* Docket Item 6-20.

fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Tucker's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). He has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Tucker has contested whether he can be deported, and the resolution of that issue remains pending before the Second Circuit. In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

This Court recognizes that the government's interest in detaining Tucker may be quite strong as well. The government contends that Tucker "poses a danger to the community" that justifies his continued detention. Docket Item 5-1 at 12. In fact, Tucker is detained under 8 U.S.C. § 1226(c), which applies to noncitizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[7] *Id*. at 846. Thus, in mandating the detention of

---

[7] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

15

criminal noncitizens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community. *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal [noncitizens] who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal [noncitizens] failed to appear for their removal hearings").[8] "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991).

### C.     The Procedures Used Thus Far

Finally, this Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to Tucker's liberty interests. According to the government, "DHS has reviewed [Tucker's] custody status on multiple occasions and determined that he did not warrant release from custody." *See* Docket Item 5-3 at ¶ 28. But Tucker has not been given the opportunity to challenge his detention at a hearing; in fact, section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he is, in fact, a danger or a flight risk. *Jennings*, 138 S. Ct. at 846. Now that Tucker's detention has become unreasonably prolonged, due

---

[8] The Court noted that this number included noncitizens who were released from custody *without* an individualized bond hearing. *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these [noncitizens] on bond, it is not clear that *all* of the [noncitizens] released were in fact given individualized bond hearings." (emphasis in original)).

process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation and internal quotation marks omitted). When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)). That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the noncitizen will appear for any future proceeding.[9] This

---

[9] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

requires consideration of less restrictive alternatives to detention. *See id.*; *cf. United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the [g]overnment's obligation to prove that the alternative will be ineffective to achieve its goals.").

### D.     Conclusion

Tucker's section 1226(c) detention has been unreasonably prolonged. Because section 1226(c) does not require an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, it is unconstitutional as applied to him. As such, his continued detention violates the Due Process Clause.

Tucker must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Tucker's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community. The decisionmaker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount Tucker can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

### III. LIMIT ON TRANSFERRING TUCKER

Tucker also has asked this Court to order the respondent "not to transfer [him] outside the Western District of New York during the pendency of this petition." Docket Item 1 at 18.

Now that this Court has conditionally granted Tucker's writ, his jurisdictional concerns are not unreasonable. After all, "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions accordingly." *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 n.5 (6th Cir. 2006)). But "[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *See Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where Tucker is housed, this Court retains jurisdiction over his habeas petition. So there is no need to interfere with DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. § 1231(g)(1), and Tucker's motion to prevent his transfer is denied.

### ORDER

In light of the above, IT IS HEREBY

ORDERED that Tucker's motion for an order preventing his transfer is DENIED; and it is further

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Tucker from detention unless a neutral

decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Tucker's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decisionmaker must find, by clear and convincing evidence, that no condition or combination of conditions of release can reasonably ensure Tucker's appearance and the safety of the community—that is, even with conditions, Tucker presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order.

SO ORDERED.

Dated:	November 9, 2022
	Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE