UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HENRY VICKEY TUCKER,

        Petitioner,

        v.

JEFFREY SEARLS, *in his official capacity*
*as Officer-in-Charge, Buffalo Federal*
*Detention Facility, U.S. Immigration and*
*Customs Enforcement, U.S. Department*
*of Homeland Security*,

        Respondent.

_____

        22-CV-608-LJV
        DECISION & ORDER

Henry Vickey Tucker is a citizen of Liberia who has been detained at the Buffalo

Federal Detention Facility ("BFDF") in Batavia, New York, during his removal

proceedings.  On August 10, 2022, Tucker filed a petition for a writ of habeas corpus

under 28 U.S.C. § 2241, challenging the validity of his detention at BFDF.  Docket Item

1.

On November 9, 2022, this Court granted that petition in part and denied it in

part.  Docket Item 9.  More specifically, the Court ordered the government to "release

Tucker from detention unless a neutral decisionmaker conduct[ed] an individualized

hearing to determine whether his continued detention is justified."  *Id.* at 19-20.  At that

hearing, the burden of proof was to be on the government to demonstrate "by clear and

convincing evidence that Tucker's continued detention is necessary to serve a

compelling regulatory purpose, such as minimizing risk of flight or danger to the

community."  *Id.* at 20.  The Court further ordered that "[t]he decisionmaker also must

consider—and must address in any decision—whether there is clear and convincing

evidence that there are no less-restrictive alternatives to physical detention, including

release on bond in an amount Tucker can reasonably afford, with or without conditions,

that also would reasonably address those same regulatory purposes." *Id.* at 18.

On November 30, 2022, Tucker had a bond hearing before an immigration judge

("IJ"). *See* Docket Item 13-1 at 5. On December 5, 2022, the IJ issued a written

decision concluding that the government had established by clear and convincing

evidence "that [Tucker] presents a current danger to the community" and "that no bond,

alternative to bond, or combination thereof could address the [g]overnment's interest in

protecting the community." Docket Item 13-2.

On January 20, 2023, Tucker moved to enforce this Court's order of November 9,

2022, arguing that his bond hearing did not comport with this Court's direction. Docket

Item 13-1. On February 3, 2023, the government responded to Tucker's motion, Docket

Item 14; and on February 10, 2023, Tucker replied, Docket Item 15.

For the reasons that follow, Tucker's motion to enforce is denied.

## BACKGROUND[1]

Following this Court's decision and order, Docket Item 9, and Tucker's bond

hearing, *see* Docket Item 13-1 at 5, the IJ denied Tucker's "request for a change in

custody status," Docket Item 13-2 at 7.[2]  In his written decision, the IJ found that the

---

[1] The Court assumes familiarity with the factual background in this case, which is described in its decision and order on Tucker's petition.  *See* Docket Item 9 at 1-4.  Accordingly, the Court will refer only to the facts necessary to explain its decision on this motion.

[2] When Tucker moved to enforce this Court's previous order, Tucker's counsel "ha[d] not yet been able to transcribe the audio" of the bond hearing and "accordingly, [did] not submit[] a hearing transcript."  Docket Item 13-1 at 8 n.2.  But counsel noted

government had established by clear and convincing evidence that Tucker is a danger

to the community.[3]  *Id.* at 3-6.  The IJ based that conclusion on Tucker's criminal record

which includes "serious crimes" such as attempted murder in the second degree, *see*

Docket Item 13-3, as well as his recent disciplinary history at BFDF which includes

incidents of "assault" and "fighting," *see* Docket Item 13-5.[4]  Docket Item 13-2 at 3-6.

The IJ then considered alternatives to detention and found that the government

had established by clear and convincing evidence "that no alternative to physical

detention, bond amount, or combination thereof would ameliorate the risk of danger to

the community."  *Id.* at 6-7.  The IJ noted that in reaching his conclusion, he "considered

the alternatives to [Tucker's] continued detention, the arguments of the parties, and the

record evidence, including the declaration of Michael K. Ball, Supervisory Detention and

Deportation Officer at the Buffalo Federal Detention Facility."[5]  *Id.*  And he specifically

stated "that alternatives to detention, such as an electronic ankle monitor, will be

---

that he "believes this Court may resolve the issues raised in [Tucker's] [m]otion without conferring the hearing transcript."  *Id.*  This Court agrees: the parties' submissions and the IJ's written decision provide a clear picture of what transpired at the bond hearing and the IJ's reasoning.

[3] Because the IJ found that Tucker is a danger to the community, he did not "address whether [Tucker] poses a risk of flight."  Docket Item 13-2 at 6.

[4] Although Tucker submitted evidence to support his argument that he is not a danger to the community, *see* Docket Items 13-6 and 13-7, the IJ "belie[ved]" those documents were "untimely" filed and thus did not consider them, Docket Item 13-1 at 8 n.1; *see* Docket Item 13-2 at 3.  Tucker does not challenge the exclusion of his evidence.  Docket Item 13-1 at 8 n.1.

[5] In addition to Ball's declaration, Docket Item 13-4 at 4-5, the government submitted to the IJ (1) a 2020 report about Immigration and Customs Enforcement's ("ICE") Intensive Supervision Appearance Program ("ISAP"), *id.* at 7-23; and (2) a U.S. Government Accountability Office memorandum titled, "ICE Needs to Better Assess Program Performance and Improve Contract Oversight," *id.* at 25-26.

ineffective to achieve [the government's] goal of public safety, in that it acts [sic] as a monitoring device in location only, and does not observe what [Tucker] might be doing." *Id.* The IJ concluded that Tucker is not "a suitable candidate for any alternative to detention, given that he has engaged in life-threatening behavior, has a serious criminal record, and continues to engage in dangerous behavior while detained at BFDF." *Id.*

## DISCUSSION

### I.     JURISDICTION

Before addressing the merits of Tucker's argument that his bond hearing did not comport with this Court's order, this Court must address two threshold jurisdictional issues raised by the government.

#### A.     Exhaustion

The government argues that this Court cannot consider Tucker's motion because he has not exhausted his administrative remedies. More specifically, the government argues that Tucker must first obtain a decision from the Board of Immigration Appeals ("BIA") on an appeal of the IJ's bond decision before he can seek relief in this Court. *See* Docket Item 14 at 6-7.

This Court disagrees. Administrative exhaustion is not required when this Court is deciding only whether the petitioner received the relief that the Court already ordered. *See Blandon v. Barr*, 434 F. Supp. 3d 30, 37 (W.D.N.Y. 2020). Moreover, Tucker argues in his motion that he did not receive a constitutionally adequate bond hearing— an issue that "the BIA does not have jurisdiction to adjudicate." *Id.* (quoting *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002)). Finally, the government

concedes that the "exhaustion requirement" is only "prudential," Docket Item 14 at 1-2,

and that this Court therefore need not require exhaustion.  So under the circumstances,

it would make little sense for this Court to delay deciding Tucker's motion.

### B.      Statutory Bar

The government also argues that "a statutory bar"—8 U.S.C. § 1226(e)—"divests

th[is] Court of jurisdiction to review the IJ's release denial."  Docket Item 14 at 7-10.

This Court agrees that under section 1226(e), it does not have jurisdiction to review

discretionary decisions of an IJ.  But as this Court has previously explained, "a federal

court always retains jurisdiction to enforce its lawful judgments, including habeas

judgments, [and] the court has the authority to see that its judgment is fully effectuated."

*Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235 (W.D.N.Y. 2019) (alteration in

original) (quoting *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010)).  In other words,

this Court has jurisdiction to decide the limited question of whether Tucker's bond

hearing complied with its prior order.

## II.      SUFFICIENCY OF TUCKER'S BOND HEARING

Tucker argues that the IJ failed to comply with this Court's prior order and that

the government did not establish by clear and convincing evidence that no alternatives

to detention could mitigate the danger Tucker poses to the community.[6]  Docket Item

13-1.  This Court disagrees and finds that Tucker's bond hearing was adequate.

---

[6] Tucker does not challenge the IJ's finding that the government met its burden of proving that he is a danger to the community.  *See* Docket Item 13-1 at 8 n.1 (Tucker's motion to enforce) ("As [] Tucker only challenges the sufficiency of the [government's] evidence and the [IJ's] findings concerning alternatives to detention . . .").

### A.     Legal Standard

"In reviewing [a petitioner's] motion to enforce, 'it is important to emphasize that the Court's task is narrow: it is to determine whether [the respondent] complied with the Decision and Order, not to review the hearing evidence *de novo*." *Blandon*, 434 F. Supp. 3d at 38 (citing *Apollinaire v. Barr*, 2019 WL 4023560, at *3 (W.D.N.Y. Aug. 27, 2019)) (collecting cases).  This Court therefore approaches Tucker's motion to enforce "mindful of [the] obligation to afford . . . a degree of deference to the [factfinder's] determinations."  *United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990).

This Court ordered the "decisionmaker" at Tucker's bond hearing to "consider— and [] address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond . . . with or without conditions, that [] would reasonably address" the government's concerns that Tucker is a flight risk or a danger to the community.  Docket Item 9 at 18. "The clear-and-convincing burden of proof requires the government to prove that a factual contention is highly probable."  *Blandon*, 434 F. Supp. 3d at 38 (citations and internal quotation marks omitted); *see also Mathon v. Searls*, 2022 WL 3699435, at *5 (W.D.N.Y. Aug. 26, 2022) (noting that to satisfy the clear and convincing standard, the "ultimate factfinder" must have "an abiding conviction that the truth of the proponent's factual contentions are highly probable" (alteration and internal quotation marks omitted) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984))).

"When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof."  *Hechavarria*, 358 F. Supp. 3d at 240.  First, the adjudicator's decision may make it clear that the correct standard was not applied.  *Id.*  Second, as this Court has

noted, "a challenge may be based on the contention that the decisionmaker erred

because the evidence could not—as a matter of law—have supported the adjudicator's

conclusion." *Id.* (citing *Nguti v. Sessions*, 2017 WL 5891328, at \*2 (W.D.N.Y. Nov. 29,

2017)).

So there are two questions now before this Court: (1) whether the IJ clearly

applied the wrong standard; and (2) "whether during [Tucker's] bond hearing the IJ

'relied upon proof that could not possibly establish by clear and convincing evidence'"

that no alternative to detention could address the danger Tucker poses to the

community, *see Blandon*, 434 F. Supp. 3d at 38 (quoting *Nguti*, 2017 WL 5891328, at

\*2).

### B.    The IJ's Decision

After Tucker's bond hearing, the IJ concluded that the government established by

clear and convincing evidence that "no bond, alternative to bond, or combination thereof

could address" the danger Tucker poses to the community.  Docket Item 13-2 at 6-7.

Tucker's issue with that conclusion is easily summarized: he says that the government

presented—and the IJ considered—detention alternatives that are meant to mitigate

only risk of flight, not danger to the community.  Docket Item 13-1 at 9-17.  The

government responds that the evidence is sufficient to support the IJ's conclusion,

which relied on the parties' arguments, "government reports about [] alternatives to

detention program and tools, and a two-page declaration . . . describing the alternative

to detention tools available."  Docket Item 14 at 17.

The cases in this district addressing motions to enforce a habeas petition fall into

two categories.  The first consists of cases in which an IJ's decision itself makes clear

7

that the IJ did not comply with the district court's order to hold the government to a clear-and-convincing burden of proof or to address alternatives to detention. *See, e.g.*, *Hechavarria*, 358 F. Supp. 3d at 242 (granting motion to enforce where "the IJ said not one word about any alternative to detention"); *Mathon*, 2022 WL 3699435, at *8 (granting motion to enforce where the IJ "refus[ed] to consider alternatives to detention *because* she found that [the petitioner] was a danger to the community" (emphasis in original)); *Pucha Quituizaca v. Barr*, 2021 WL 6797494, at *1 (W.D.N.Y. Jan. 5, 2021) (granting motion to enforce where the IJ's written decision was only a page long and "in its entirety, read: 'flight risk, no relief available, no relatives to grant status, 13 years before seeking relief, 1 DWI'"). In those cases, the court usually grants the petitioner's motion to enforce.

The second category, on the other hand, consists of cases where an IJ considered alternatives to detention but the petitioner argued that the evidence regarding those alternatives was insufficient to satisfy the government's clear and convincing burden of proof. *See, e.g.*, *Adejola v. Barr*, 439 F. Supp. 3d 120, 130 (W.D.N.Y. 2020) (denying motion to enforce where the "IJ considered the [evidence] submitted by [p]etitioner, but ultimately concluded that [p]etitioner's conduct . . . supported the conclusion that less restrictive alternatives could not mitigate the substantial risk of flight"); *Sheriff v. Searls*, 2021 WL 6797495, at *7 (W.D.N.Y. Aug. 16, 2021) (denying motion to enforce where the IJ "considered a reporting schedule and ankle monitor" as alternatives to detention and determined that neither would mitigate the risk of flight or danger to the community); *Vides v. Searls*, 2021 WL 6846277, at *5 (W.D.N.Y. Mar. 13, 2021) (denying motion to enforce because the IJ "consider[ed]

8

ability to pay [bond] and alternatives to detention, and explained his reasoning for

concluding that they were not viable under the circumstances").  In those cases, the

court usually denies the petitioner's motion to enforce.

Tucker's case falls in the second category.  To start, the IJ's seven-page written

decision, Docket Item 13-2, was thorough and reasoned, unlike the one-page decision

in *Pucha Quituizaca*, 2021 WL 6797494, at *1.  And "[w]hile not dispositive, the IJ

expressly noted on multiple occasions that the [g]overnment bore [a clear-and-

convincing] burden."  *See Adejola*, 439 F. Supp. 3d at 129; Docket Item 13-2 at 3, 6-7.

Furthermore, while the IJ found that the government established by clear and

convincing evidence that Tucker poses a danger to the community, he did not "refus[e]

to consider alternatives to detention *because* []he found that [Tucker] was a danger to

the community," *see Mathon*, 2022 WL 3699435, at *8 (emphasis in original).  So the IJ

did not clearly apply the wrong standard.

Rather, the IJ explicitly addressed several alternatives to detention: bond, ankle

monitoring, and in-person reporting.  Docket Item 13-2 at 6.  He "explained why the

government's evidence made it highly probable" that those alternatives would not

mitigate the danger Tucker poses, *cf. Hechavarria*, 358 F. Supp. 3d at 242: those

alternatives do not track activity, leaving the person being monitored free to engage in

dangerous conduct, Docket Item 13-2 at 6.  And he considered other alternatives

addressed by the government, *see id.* (referring to consideration of "the record

evidence"), which included "biometric voice recognition software, unannounced home visits, [and] employer verification," *see* Docket Item 14 at 17 (citing Docket Item 13-4).[7]

Indeed, the IJ noted his view that "a respondent who poses a threat of danger to the community should be held without bond," Docket Item 13-2 at 6, but he then recognized that this Court imposed an additional obligation, and he deferred to that obligation and this Court's ruling. More specifically, he said that he "takes seriously [his] obligation under the order of the District Court," *id.*, and he then honored that obligation and considered alternatives to detention using the appropriate standard of proof.

---

[7] Tucker did not present to the IJ the alternative to detention that he raises in his motion: "requiring [him] to attend anger management programs and to submit reports to demonstrate compliance." Docket Item 13-1 at 15-16; *see* Docket Item 14 at 20 (noting that Tucker did not present that alternative to the IJ). But requiring an IJ to consider a new, specific alternative to detention raised in a motion to enforce risks an endless cycle of remanding the case to the IJ to consider the alternative, hearing a motion to enforce that raises a different alternative, then remanding again. That situation is unsustainable; as the government argues—and Tucker seems to concede, *see* Docket Item 15 at 8, 10—the IJ "should [not] have to affirmatively and unprompted th[ink] of, consider[], and thereafter state[] in his decision every alternative condition (or combination thereof) imaginable." Docket Item 14 at 18-19 (citing *Gallegos v. Garland*, 25 F.4th 1087, 1092 (8th Cir. 2022) ("We have previously explained that it is unnecessary for agencies to list every possible positive and negative factor in its decision, or to write an exegesis on every contention." (internal quotation marks omitted))).

Remanding for consideration of specific alternatives not presented to an IJ is best suited for "obvious alternative[s] to detention," such as the requirement that a petitioner "obtain continuing mental health treatment" when the government is concerned that his compliance with other conditions of release depends on his "mental health treatment." *See Mathon*, 2022 WL 3699435, at *9. Requiring Tucker to attend anger management classes is not such an obvious alternative; in fact, as the government notes, Tucker apparently participated in "alternative to violence programs while incarcerated"—before "the incidents of violent behavior he [] exhibited while at BFDF"—and they did not "mitigate his dangerousness in the past." Docket Item 14 at 20; *see also* Docket Item 13-2 at 6 (IJ order) (finding that the evidence submitted by Tucker, including letters of support and "certificates," "do[es] not sufficiently rebut [Tucker's] dangerousness" because much of that evidence "pre-dates [Tucker's] behavior at [] BFDF").

The IJ's decision here is much like the one in *Vides*, where the court denied the petitioner's motion to enforce:

> [The IJ] took into consideration the request for bond . . . . [The] IJ [] also explained his conclusions that alternatives like electronic monitoring or supervision could not achieve the goal of public safety . . . . [The p]etitioner's arguments largely amount to criticism that [the] IJ [] did not provide more detailed explanations for his consideration of ability to pay and alternatives to detention.  While the Court agrees that greater detail could have been provided, the decision makes clear that [the] IJ [] did take those matters under consideration as directed, and resulted in the legally permissible conclusion that the alternatives considered were not appropriate under the facts before him.

*Vides*, 2021 WL 6846277, at *5.

It is true that the alternatives to detention addressed by the government are largely meant to address flight risk rather than risk of danger to the community.  *See* Docket Item 13-4 at 4 ("ISAP [] is not a tool to monitor noncitizens that ICE believes are a danger to the community.").  But that does not mean that the IJ did not consider a range of alternatives and still find that no alternatives would mitigate the danger Tucker poses.  And that is especially so given the evidence of Tucker's "life-threatening behavior, . . . serious criminal record, and continue[d] engage[ment] in dangerous behavior" while detained.  *See* Docket Item 13-2 at 6-7; *cf. Blandon*, 434 F. Supp. 3d at 40 (noting that the IJ "relied upon proof that could not possibly establish that [p]etitioner was a flight risk by clear and convincing evidence" when "[t]he only evidence relied on . . . was evidence provided by [*p*]*etitioner*" (emphasis in original)).  For example, it was reasonable to conclude that alternatives to detention are not suitable for Tucker because they "do[] not observe what [Tucker] might be doing."  *See* Docket Item 13-2 at 6.

11

While this Court may have reached a different conclusion regarding the possibility of suitable alternatives to detention, "it is not this Court's role to engage in a re-weighing of the evidence considered by the IJ." *Adejola*, 439 F. Supp. 3d at 130; *see also Sheriff*, 2021 WL 6797495, at *7 ("Since [the] IJ [] explicitly considered several different alternatives to detention, [p]etitioner's challenge boils down to a request that this Court reweigh the evidence and testimony presented at hearing, which is beyond this Court's purview."). Instead, this Court must answer only the two questions posed above: (1) whether the IJ clearly applied the wrong standard; and (2) whether the IJ relied upon evidence that was insufficient as a matter of law to establish by clear and convincing evidence that no alternative to detention could address the government's interest in protecting the community.

The answer to both questions is no: "The IJ applied the burden of proof ordered by this Court, performed the necessary analysis, and relied on the evidence of record in reaching h[is] conclusion." *See Adejola*, 439 F. Supp. 3d at 130. "That is sufficient to establish compliance with the Court's [decision and order]." *See id.*

## CONCLUSION

For the reasons stated above, Tucker's motion to enforce, Docket Item 13, is DENIED.

SO ORDERED.

12

Dated:   May 5, 2023
         Buffalo, New York


                                          /s/ Lawrence J. Vilardo
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE